350 So.2d 1134 (1977)
CLEARWATER FEDERAL SAVINGS & LOAN ASSOCIATION, Petitioner,
v.
DEPARTMENT OF REVENUE of the State of Florida, Respondent.
No. 77-226.
District Court of Appeal of Florida, Second District.
October 21, 1977.
*1135 David E. Platte of Richards, Nodine, Gilkey, Fite, Meyer & Thompson, Clearwater, for petitioner.
Robert L. Shevin, Atty. Gen., and E. Wilson Crump, II, Asst. Atty. Gen., Tallahassee, for respondent.
HOBSON, Acting Chief Judge.
Petitioner brings this petition to review an administrative order entered by the respondent assessing certain income tax deficiencies against petitioner for the calendar years 1972, 1973 and 1974 under the Florida Income Tax Code.
Petitioner is a federally chartered savings and loan association which prior to the calendar year 1971 used the cash receipts and disbursements method of accounting for federal income tax purposes. Petitioner desired to change its method of accounting to the accrual method commencing with the calendar year 1971. Permission to do this was granted by the Internal Revenue Service. Consistent with this change of its method of accounting, all net accrued income as of January 1, 1971 was recorded in its entirety in petitioner's financial statements as of December 31, 1970. However, rather than report a large block of income on January 1, 1971, the date of the change, petitioner entered into an agreement with the Internal Revenue Service, pursuant to Revenue Procedure 70-27, to spread the reporting of its accrued income over a ten-year period for federal tax purposes. The total net adjustment required to convert to the accrual method was $758,911. The agreement with the Internal Revenue Service required petitioner to report an annual adjustment of $75,891 on its federal income tax return. However, all income represented by these annual adjustments was accrued and realized by petitioner prior to January 1, 1971.
In 1970 and 1971, petitioner timely filed its Florida intangible personal property tax returns and paid Florida intangible tax for each of those years. Upon subsequent review of petitioner's records, it became apparent that petitioner had overpaid the intangible tax for those years and a refund claim was submitted. This refund was issued to petitioner by the State of Florida during the calendar year 1973 and reported in petitioner's 1973 federal corporate income tax return.
On January 1, 1972, the Florida Income Tax Code became effective. However, petitioner did not report the annual adjustment of $75,891 on its Florida corporate income tax return for the years 1972, 1973 and 1974, nor did petitioner report the refund of the erroneously paid intangible tax received in 1973 on its Florida corporate income tax return.
Respondent assessed the deficiencies in dispute despite the fact that the income reported by the annual adjustment and petitioner's entitlement to the refund of the intangible tax both occurred prior to November 2, 1971, when the Florida Constitution was amended to permit imposition of a tax on the income of other than natural persons. Following the amendment, the Florida Legislature enacted the Florida Income Tax Code, Chapter 220, Fla. Stat. (1975), which imposed an income tax commencing January 1, 1972 on other than natural persons.
The administrative order before us for review provided:
"1. That the proposed corporate income tax deficiencies for the tax years 1972, 1973, and 1974, issued by the Respondent with respect to annual adjustments of $75,891.00 for each of the tax years reflecting a change in the Petitioner's accounting method is affirmed.
"2. The proposed deficiency for the 1973 tax year which relates to a refund of Petitioner's intangible personal property taxes for the years 1970 and 1971 is affirmed."
Prior to November 2, 1971, the Florida Constitution contained a direct prohibition *1136 against the levying of any tax upon corporate income. It is petitioner's position that all of the income upon which the corporate income tax assessed against it is based was realized prior to November 2, 1971, when the Florida Constitution prohibited any tax upon corporate income. Petitioner receives absolutely no benefit at the time the annual adjustments are reported on its federal income tax return. In fact, any benefit petitioner might have received occurred immediately at the time of the change in its accounting method on January 1, 1971. The total net adjustment of accrued income was $758,911, consisting of one month's total interest due on all mortgage loans made by petitioner. Interest is paid in arrears to petitioner by its borrowers. On January 1, 1971, the date of petitioner's change to the accrual method of accounting, petitioner was entitled to receive $758,911 in interest income representing accrued interest from December, 1970. This amount would, of course, not be reported on petitioner's 1970 federal income tax return inasmuch as petitioner was still on the cash method of accounting for 1970 and the borrowers' payments for December's interest would not have been due or received until after December 31, 1970. However, since petitioner was using the accrual method of accounting subsequent to January 1, 1971, only the accrued income for each of the months ending in 1971 would be reported on petitioner's 1971 income tax return. Therefore, the federal government required petitioner to make the adjustment of $758,911 as of the date of petitioner's change of accounting methods, lest this amount escape federal taxation. Petitioner's actual receipt of a benefit occurred on January 1, 1971, when it increased its net worth on its financial statement for December 31, 1970, and assuming all borrowers made their interest payment on January 1, 1971, actual receipt of the money occurred on that date.
As to the corporate income tax imposed on the intangible tax refund received by petitioner in 1973, petitioner theorizes that it had erroneously overpaid its Florida intangible personal property taxes during 1970 and 1971, which overpayment was refunded during 1973. For federal income tax purposes, petitioner had deducted the amount of the State intangible tax paid from its federal income taxes for the 1970 and 1971 tax years. The refund was reported on petitioner's 1973 federal income tax return as income under Section 111 of the Internal Revenue Code. 26 U.S.C.A., Section 111. The amount was necessarily includable as income in 1973 for federal tax purposes because petitioner had received a federal tax benefit during the years 1970 and 1971.
Under Section 220.02(3) of the Florida Statutes, the concepts embodied in Section 111 of the Internal Revenue Code should be utilized in determining petitioner's Florida income tax. With respect to petitioner's recovery in 1973 of the $35,246 erroneously paid intangible taxes for the years 1970 and 1971, it is apparent that the prerequisite to the realization of income under Section 111 concepts is absent. In 1970 and 1971, the years the intangible tax was paid, there was no Florida income tax and, thus, no Florida taxable income from which a tax-reducing deduction could be taken. The necessary deduction was not only improper, but nonexistent. Section 111 concepts, as applied to the Florida income tax, plainly would not create any income. The refund was necessarily includable as income for federal tax purposes in 1973 because petitioner had received a federal tax benefit during 1970 and 1971. No similar Florida tax benefit had been realized since the Florida corporate income tax was not then in existence.
It is the respondent's position that even though the income upon which the Florida corporate income tax is levied was realized prior to the constitutional amendment of November 2, 1971, it was recognized for federal income tax purposes after said amendment and that the Florida Corporate Income Tax Code specifically contemplates taxation of such sums by virtue of using as a starting point "adjusted federal income." Fla. Stat. Section 220.12(1). Therefore, they posit that where the income *1137 to be taxed is reflected on the federal income tax return for the same period, regardless of what the reasons may be for its inclusion on the federal return, such tax imposition is not retroactive and therefore not prohibited by Florida Statute, Section 220.02(4).
As we understand the respective positions of the parties, the petitioner is depending on the realization of income doctrine and the respondent on the doctrine of recognition of the income as reported to and taxed by the federal government.
In Department of Revenue v. Leadership House, Inc., 343 So.2d 611 (Fla. 1977), our supreme court stated the issue and its holding as follows:
"The issue concerns the validity of the state corporate income tax upon increases in the value of capital assets which occurred prior to November 2, 1971, but were not realized by the sale or transfer of the capital assets until after the effective date of the corporate income tax constitutional amendment and the enactment of the Florida Income Tax Code. We reverse, holding that appreciation in value of a capital asset is not income until it is realized from a sale, exchange or other disposition of the asset, and that the present Florida corporate income tax on such capital gain is constitutional and proper."
While the issue involved in this case is not the same as in the Leadership case, our supreme court stated in Leadership, "We believe the realization doctrine is the fairest for all taxpayers." We agree with this statement and, therefore, grant the petition for review and reverse the administrative order entered by respondent.
McNULTY and OTT, JJ., concur.